# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| v. | : | |
| DANIEL M. VAN PELT | : | Mag. No. 09-8141 (MCA) |

I, Robert J. Cooke, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

From in or about February 2009 to in or about May 2009, in Ocean County, in the District of New Jersey and elsewhere, defendant

## DANIEL M. VAN PELT

did knowingly and willfully attempt to obstruct, delay, and affect interstate commerce by extortion under color of official right, by accepting and agreeing to accept a corrupt payment that was paid by another, with that person's consent for defendant DANIEL M. VAN PELT'S benefit in exchange for his official assistance.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT A

continued on the attached page and made a part hereof.

_____
Robert J. Cooke, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
July 21, 2009, at Newark, New Jersey

HONORABLE MADELINE COX ARLEO          _____
UNITED STATES MAGISTRATE JUDGE          Signature of Judicial Officer

1

ATTACHMENT A

    I, Robert J. Cooke, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have personally participated in this investigation and am aware of the facts contained herein, based upon my own investigation, as well as information provided to me by other law enforcement officers. Because this Attachment A is submitted for the limited purpose of establishing probable cause, I have not included herein the details of every aspect of the investigation. Statements attributable to individuals contained in this Attachment are related in substance and in part, except where otherwise indicated. All contacts discussed herein were recorded, except where otherwise indicated.

    1.  At all times relevant to this Complaint, defendant DANIEL M. VAN PELT (hereinafter, "defendant VAN PELT") served as an elected member of the New Jersey State Assembly representing New Jersey's Ninth Legislative District. As an Assemblyman, defendant VAN PELT's official duties included: (a) proposing, voting on, and drafting legislation; (b) conducting and permitting in committee hearings, including as a member of the Committee on the Environment and Solid Waste (the "Environmental Committee"); (c) exercising legislative oversight concerning State agencies and departments, including as a member of the Environmental Committee which oversaw the activities of the New Jersey Department of Environmental Protection ("DEP"); (d) making recommendations to, and negotiating with State agencies and departments; and (e) providing constituent services to New Jersey citizens and organizations, which services included bringing the merits of a citizen's position to the attention of State agencies and departments and making a recommendation on a matter or indicating support for a citizen's position to State agencies or departments. In addition, defendant VAN PELT served as Township Administrator for Lumberton Township, New Jersey since at least in or about 2006. As the Township Administrator for Lumberton Township, defendant VAN PELT was generally responsible for the day-to-day administration of Lumberton Township affairs, supervision of municipal department heads, and implementation of Lumberton policies. Defendant VAN PELT also served on the Ocean Township Committee from in or about 1998 to in or about 2009.

    2.  At all times relevant to this Complaint, there was a cooperating witness (the "CW") who, for the purposes of this investigation, posed as a real estate developer interested in development in Ocean County, New Jersey. The CW represented that the CW did business in numerous states, including Florida and New Jersey, and that the CW paid for goods and services in interstate commerce.

3. On or about February 11, 2009, defendant VAN PELT met with the CW at a restaurant in Waretown, New Jersey. During this meeting, defendant VAN PELT was informed by the CW that the CW was interested in developing real estate in Waretown, and the surrounding areas. Defendant VAN PELT explained to the CW that to develop certain properties in Ocean County, the CW would need to acquire a Coastal Area Facility Review Act ("CAFRA") permit for such properties from the DEP.[1] Defendant VAN PELT further indicated to the CW that Waretown was in his legislative district, and that consequently, he could assist the CW with the CW's real estate development interests there. Defendant VAN PELT also was advised by the CW that the CW wanted defendant VAN PELT on the CW's "team." Defendant VAN PELT then suggested that the CW hire defendant VAN PELT as a "consultant" and laughed as he made this suggestion. Defendant VAN PELT was then advised by the CW that the CW was not a member of the democratic or republican parties, but that the CW was a member of the "green" party and that "green is cash," meaning that the CW was willing to pay cash to defendant VAN PELT for his assistance.

4. At the end of the meeting, defendant VAN PELT and the CW discussed defendant VAN PELT joining the CW's "team" and the possibility of defendant VAN PELT accepting $10,000 from the CW "to start" and more money from the CW if the CW's real estate development projects proceeded successfully.

5. On or about February 21, 2009, defendant VAN PELT and the CW met at a restaurant in Atlantic City. During this meeting, defendant VAN PELT explained that it would be "challenging" but "doable" for the CW to receive CAFRA permits for the CW real estate development projects in Ocean County, but agreed with the CW who stated that defendant VAN PELT knew the "right guys" who could cause the CW to receive such permits quickly. As the meeting continued, defendant VAN PELT asked the CW "what do you want me to do [for you]?" When defendant VAN PELT was informed by the CW that the CW was particularly concerned about CAFRA permits, defendant VAN PELT assured the CW that defendant VAN PELT had a "pretty good reputation with the State" and that he could deal with the DEP, who defendant VAN PELT agreed "worked for" him [meaning defendant VAN PELT oversaw the DEP as a member of the Environmental Committee]. Later in the meeting, as another restaurant customer took a photograph,

---

[1] CAFRA requires developers to acquire State permits for various construction projects in New Jersey coastal areas, such as Ocean County. See N.J.S.A. § 13:19-5.

3

defendant VAN PELT stated "we don't want to get our picture taken" and laughed.

6. At the end of the meeting, defendant VAN PELT accepted $10,000 in cash from the CW as defendant VAN PELT was advised by the CW "I'm telling you, DEP and CAFRA, that's where I need my most ah, assistance." In response, defendant VAN PELT agreed to provide such official assistance and claimed that he would "hold onto it," [meaning the money he just accepted from the CW], that he did not know what he would do with the money, and that he would have assisted the CW for free. Then, defendant VAN PELT invited the CW to call him "anytime" and to have the CW's engineer call him as well.

7. On or about March 30, 2009, defendant VAN PELT met with the CW at a diner in Waretown. Regarding a potential development project in Waretown, defendant VAN PELT remarked to the CW that the CW had something due that coming week, but the CW indicated that the CW might not be ready yet. With respect to this proposed, a potential multi-unit, multi-use development, defendant VAN PELT and the CW asked each other questions about various contacts each of them were supposed to make in connection with the project. Defendant VAN PELT indicated that he would send himself an e-mail to remind himself to make particular contact. Defendant VAN PELT further advised the CW that the Waretown Administrator was leaning towards engaging in the project with a certain developer. Defendant VAN PELT further stated that he was not, as yet, going to tell Waretown officials about the CW, remarking that he and the CW knew what was necessary to be successful. Defendant VAN PELT also advised the CW that before the CW submitted an application regarding this project, defendant VAN PELT wanted to review it, to counsel the CW on what to add or remove so as to fine tune the application to give the CW the best possible chance of prevailing. Defendant VAN PELT further suggested that since the town was having budget problems, if the CW offered some good faith payment to the town, that this could enhance the CW's application.

8. During this meeting, defendant VAN PELT also indicated that he could expedite approvals for the CW from the DEP, to include matters involving CAFRA. By way of example, defendant VAN PELT told the CW that he was able to secure a CAFRA permit for another individual in six months. In response to the CW observing that defendant VAN PELT knew the "right guys," VAN PELT replied to the CW that one had to "know" how to "work" the "channels." Later at this meeting, defendant VAN PELT further disclosed that he still had the "envelope" (likely a reference to the $10,000 that VAN PELT had accepted from the CW on or about

4

February 21st) in his top drawer. Shortly thereafter, defendant VAN PELT told the CW that he wanted to get the project done for the CW, and if VAN PELT did not, then the CW would get "it" (likely referring to the $10,000) back. Defendant VAN PELT further told the CW that the CW's project would be a good one and that VAN PELT would like to see the CW get it because he thought that the CW would do a "nice job." At the end of the meeting, the CW provided defendant VAN PELT with a GPS device for VAN PELT to utilize to obtain driving directions.

9. On or about May 15, 2009, defendant VAN PELT met with the CW at a diner in Waretown. There, they discussed the CW's plans for the Waretown project, for which the CW purported to include a number of retail stores and food chains in the CW's plan. The CW also indicated to defendant VAN PELT that the CW would need DEP permits in connection with wetlands issues. Defendant VAN PELT indicated that he could make telephone calls and meet with DEP officials on behalf of the CW. Defendant VAN PELT also urged the CW to try to get something down on paper to show to Waretown officials who were involved in the development process. Defendant VAN PELT further indicated that he could meet with engineers involved with Waretown and the project to further assist the CW. Defendant VAN PELT also indicated to the CW that he would set up a meeting with a Waretown official, whom VAN PELT believed had influence with other Waretown officials, and the CW, to discuss the project in an attempt to assist the CW in determining whether Waretown officials were on the CW's "team" before the CW engaged in significant action and expense regarding the project.

10. On or about May 22, 2009, defendant VAN PELT met with a Waretown Official (the "Official) and the CW at a diner in Waretown. Defendant VAN PELT arranged for the Official to meet the CW. Before the Official arrived, defendant VAN PELT and the CW, among other things discussed the fact that another assemblyman who sat near defendant VAN PELT in the New Jersey General Assembly who has come under federal indictment just the day before. Defendant VAN PELT referred to this activity as "dumb." In response to a question from the CW, defendant VAN PELT indicated that the CW did not have to discuss the CW's "generosity" with the Official, and that, even if the CW did not know defendant VAN PELT, the CW did not have to have such discussion with the Official. Defendant VAN PELT added that the CW should just give the Official a quality project in Waretown. Thereafter, the Official arrived and the three parties discussed the project in Waretown. After the Official left, among other things, the CW expressed concern about getting involved in the project and then determining that the CW did not have the support

of the Waretown officials, causing the CW to lose substantial money. In response, defendant VAN PELT assured the CW that VAN PELT would not let the CW do that, and if VAN PELT saw things "going south," VAN PELT would let the CW know. Later, defendant VAN PELT further told the CW that he would assist the CW in Waretown, that the CW did not owe VAN PELT anything, and that VAN PELT wanted to see Waretown and the CW do well. In response to the CW indicating that the CW was willing to pay more money to officials, including defendant VAN PELT, for their assistance, defendant VAN PELT indicated to the CW that if VAN PELT ran for a seat in the United States Congress, they would talk.